Vernon Leroy JOHNSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–82–689.

Court of Criminal Appeals of Oklahoma.

Jan. 23, 1984.

Thomas J. Ray, Jr., Asst. Public Defender, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## MEMORANDUM OPINION

BUSSEY, Presiding Judge:

The appellant, Vernon Leroy Johnson, hereinafter referred to as the defendant, was convicted of First Degree Murder and Assault and Battery with a Deadly Weapon with Intent to Kill, After Former Conviction of Two or More Felonies, in Oklahoma County District Court, Case No. CRF–82–388, was sentenced to life imprisonment and to 999 years' imprisonment, respectively, and he appeals.

Nelson Abram testified that on the cold Sunday morning of January 10, 1982, at 7:00 a.m., he walked to Spencer Smith's house in Oklahoma City to bring the elderly man food, entered the back door into the kitchen and heard a groan. He stated that the defendant and a second man named Upshaw came from the room where the groan was heard, attacked him, tied his legs, took his wallet and stabbed him. Abram testified that he told Otis Goldsmith, a neighbor who had come over to Smith's house at noon, that "the boy across the street beat me up." Abram stated that he had known the defendant four years, that he identified defendant's picture when police showed him a line-up of a dozen photographs and that he had no doubt that the defendant was one of the two men who had attacked him.

Goldsmith testified that he discovered Smith in a pool of blood, that he heard Abram groaning and that the defendant lived across the street from Smith.

Several detectives testified to the extremely bloody scene in the Smith house, that Smith's hands had been tied, and that a shovel in the house had blood on it.

Medical testimony established that Smith had been stabbed five times, including a fatal stab in the back, and that he had been hit in the head with sharp blows from a blunt instrument.

Detective Bill Harrison testified that Abram picked out defendant's picture from a photographic line-up without hesitation and that, upon defendant's arrest on January 27th, Mr. Johnson told police two stories, denying his involvement in both accounts.

Defendant did not testify in his own defense; but his aunt, Jewel Nelson, testified that defendant was at her house at 6:30 p.m. Saturday and stayed all night before leaving Sunday morning at 9:30 to go to his sister's. Defendant's sister, Paula Wyatt, stated that defendant ate breakfast with her at 10:00 a.m. Sunday.

## I.

In his first assignment of error, defendant claims the trial court erred in refusing his requested instruction on the issue of identity. This Court held in *Melot v. State*, 375 P.2d 343 (Okl.Cr.1962), that a cautionary instruction should be given where the witness lacked opportunity to observe the assailant, or where the witness was not positive in his identification, or where the identification was weakened by either qualification or by a failure to identify the defendant on a previous occasion. Also, see *Richardson v. State*, 600 P.2d 361 (Okl.Cr.1979), and *Moreau v. State*, 530 P.2d 1061 (Okl.Cr.1975).

In the instant case, none of these circumstances were present. Nelson Abram testified that "the boy across the street beat me up," that he had no doubt defendant was one of two men who had attacked him and that he identified defendant's photograph from the dozen pictures shown to him from the police's photographic line-up. Additionally, Detective Harrison's testimony that Abram selected defendant's pictures without hesitation corroborated Abram's certainty of the identity of his attacker. We find that the Court's

instruction was proper and accordingly, dismiss this assignment of error as meritless.[1]

## II.

As defendant's second assignment of error, he argues that the trial court erred in admitting a color photograph of the deceased, depicting a view of his face and chest, because the photograph was gruesome and lacked probative value.

The test for admissibility of allegedly gruesome pictures is whether the probative value of the evidence, as it relates to an issue in the case, outweighs the prejudicial effect. *Glidewell v. State*, 626 P.2d 1351 (Okl.Cr.1981). Such is nothing more than a common judicial determination of relevancy. *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980), cert. den. 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981); 12 O.S.1981, § 2403. Further, the admissibility of photographic evidence rests within the sound discretion of the trial court and this Court will reverse only upon a clear showing of abuse of that discretion. *Seth v. State*, 647 P.2d 452 (Okl.Cr.1982).

In the present case, the photograph was relevant to illustrate the massive blunt force trauma as testified to by Dr. Chapman, Chief Medical Examiner. *Irvin v. State*, 617 P.2d 588 at 596 (Okl.Cr.1980). We find that the photo was an appropriate aid in showing the jury the extent and nature of the victim's injuries. *Stafford v. State*, 665 P.2d 1205 at 1213 (Okl.Cr.1983); *Fiorot v. State*, 641 P.2d 551 (Okl.Cr.1982). Therefore, this assignment of error is without merit.

## III.

In his third assignment of error, the defendant asserts that the trial court erred in failing to give a limiting instruction on the impeachment of defense witnesses Paul Wyatt, Paula Wyatt and Jewel Nelson. It

---

1. The court's instruction reads in part:
 You are the judges of the facts, the weight of evidence and the credibility of the witnesses. In determining such weight or credit you may consider ... the ability of the witness to

remember and relate past occurrences and means of observation, and opportunity of knowing the matters about which the witness had testified....

is clear that the defendant neither requested such an instruction nor raised the assertion in his motion for new trial; therefore he was waived the alleged error. *Oliver v. State,* 568 P.2d 1327 (Okl.Cr.1977); *Barnhart v. State,* 559 P.2d 451 (Okl.Cr.1977).

### IV.

In his fourth assignment of error, the defendant contends that the cumulative effect of errors at trial deprived him of a fair trial. As we have found each and every allegation by the defendant meritless, it follows that this proposition is similarly without merit. *Haney v. State,* 503 P.2d 909 (Okl.Cr.1972); *Hancock v. State,* 664 P.2d 1039 (Okl.Cr.1983).

### V.

 Defendant's final assignment of error is that the 999 year sentence received for the crime of Assault and Battery with a deadly Weapon with Intent to Kill was excessive. Whether the punishment was excessive must be determined by a study of all the attending circumstances of the particular case. This Court lacks the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court. *Baldwin v. State,* 596 P.2d 1269 (Okl.Cr. 1979), and cases cited therein. Considering the brutal attack of an elderly man left for dead in a freezing house, and the defendant's three prior violent felony convictions, we cannot say that the sentences received were excessive.

For the foregoing reasons, the judgment and sentence is AFFIRMED.

CORNISH, J., concurs.

BRETT, J., concurs in results.